UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CIRILO ALCANTARA,                                    :
                                                     :
                                        Plaintiff,   :
                                                     :     MEMORANDUM & ORDER
                  -against-                           :
                                                     :     15-cv-5584 (ENV) (RML)
RICHARD DIGANGI and JOHN WEIBURG,                    :
                                                     :
                                        Defendants.  :
------------------------------------------------------------ x

VITALIANO, D.J.

      Plaintiff Cirilo Alcantara, currently incarcerated at Clinton Correctional Facility, brings

this *pro se* action under 42 U.S.C. § 1983, alleging that Officers Richard DiGangi and John

Weiburg, both members of the NYPD, used excessive force during his May 30, 2012 arrest and

then denied him timely access to medical treatment for the injuries he sustained during that

arrest.  The parties engaged in discovery, and defendants now move for summary judgment on

all claims.  Defs. Br., Dkt. 70.[1]  For the reasons that follow, defendants' motion is granted in part

and denied in part.

<u>Background</u>

      The underlying facts are drawn from the submissions of the parties, including defendants'

statement of undisputed material facts ("SOF"), Dkt. 75, which accepts plaintiff's version of

events as true for purposes of the motion only.[2]  The facts are construed, as they must be in the

---

[1] The Court denied a prior motion for summary judgment filed by defendants for failure to
follow Local Civil Rule 56.2 (Notice to Pro Se Litigant who Opposes a Motion for Summary
Judgment).  *See* Dkt. 68.  Their re-filed summary judgment motion is now in compliance with
Rule 56.2 and the order granting leave to re-file.

[2] Defendants' SOF complies with Local Civil Rule 56.1.  That same rule requires plaintiff, as the
party opposing the motion, to submit a response to defendants' SOF, indicating which facts are

summary judgment context, in the light most favorable to Alcantara as the non-movant party.

*Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007).

Though the parties quarrel over certain specifics of the confrontation between Alcantara

and Officers DiGangi and Weiburg, the core events surrounding plaintiff's arrest are undisputed.

On May 30, 2012, from their home on Staten Island, Cirilo Alcantara's stepsons called the police

to report that Alcantara had raped his daughter.  SOF ¶ 1; CSOF ¶ 1.  Upon learning that the

police had been called, Alcantara, who was "very drunk" at the time, went outside, hid

underneath his car, and fell asleep.  SOF ¶¶ 2–4; CSOF ¶¶ 2–4.  When Alcantara awoke several

hours later, his neighbor reiterated to him that the police had been called.  SOF ¶ 4; CSOF ¶ 4.

Alcantara told his neighbor that he "didn't want to go to jail," the two men began "pushing and

shoving" each other and, eventually, his neighbor threw Alcantara to the ground.  SOF ¶¶ 5–6;

Manningham Decl. Ex. B (Alcantara Dep.), Dkt. 72-2, at 24:14–25:13.

After the scuffle, officers DiGangi and Weiburg arrived on the scene and placed

Alcantara in handcuffs.  SOF ¶¶ 7–8; CSOF ¶¶ 7–8.  Alcantara then sat on the sidewalk and

---

in dispute.  *See* Local Civ. R. 56.1(b)–(d).  Ordinarily, "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."  *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).  Although *pro se* litigants are not excused from the requirements of Rule 56.1, *see Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009), they are entitled to "special solicitude . . . when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).  Here, Alcantara attached several pieces of evidence to, and argued the accuracy of certain of defendants' facts in, his initial opposition papers, but he did not submit a formal counterstatement of facts in compliance with Rule 56.1(b).  *See generally* Pl. Opp., Dkt. 80.  Plaintiff did, however, submit a counterstatement of facts with his sur-reply papers.  *See* Pl. Sur-Reply, Dkt. 85, at Ex. A ("CSOF").  Most, but not all, of the statements in plaintiff's CSOF are supported by citations to record evidence, as required by Rule 56.1(d).  Accordingly, in light of Alcantara's *pro se* status, the Court has conducted an independent review of the record and will consider, for purposes of the instant motion, plaintiff's arguments that are in fact supported by admissible record evidence.  *See Geldzahler v. New York Med. Coll.*, 746 F. Supp. 2d 618, 620 (S.D.N.Y. 2010); *Wali,* 678 F. Supp. 2d at 178.  And, given plaintiff's overall substantial compliance with the rule, any Rule 56.1 deficiencies in his filings will not be considered as an independent basis for decision.

waited.  SOF ¶ 9; CSOF ¶ 9.  Next, for reasons unexplained anywhere in the record, a third police officer arrived on the scene in a second police car.  SOF ¶ 11; CSOF ¶ 11.  Officers DiGangi and Weiburg "stood [Alcantara] up," and the third officer punched him in the face twice.  SOF ¶¶ 12–13; CSOF ¶¶ 12–13.  Defendants then turned Alcantara over to two other officers, Sergeant Donaghue-Gold and Officer Liconti, who transported plaintiff back to the 122nd precinct, SOF ¶¶ 14, 17; CSOF ¶¶ 14, 17, while the third officer—never identified or sued, even as "John Doe"—mysteriously disappears from the tale.

Once at the precinct, Alcantara told the detective assigned to his case, Detective Ng, that he was feeling bad and asked to be taken to the hospital.  SOF ¶ 18; CSOF ¶ 18.  Detective Ng eventually acquiesced and called Alcantara an ambulance.  *Id.*; Alcantara Dep. at 30:4–14. Though the record is unclear as to how much time passed before he complained to Detective Ng or precisely how long it took for an ambulance to be called, *see* Alcantara Dep. at 30:15–31:19, medical records show that Alcantara arrived at the hospital in an ambulance at 3:25 a.m. on May 31, 2012, approximately four hours after his arrest.  SOF ¶¶ 16, 19; CSOF ¶¶ 16, 19.  Emergency room doctors then treated a wound on Alcantara's lip with sutures and cleaned and dressed an abrasion on the bridge of his nose.  SOF ¶ 19; CSOF ¶ 19; Manningham Decl. Ex. D, Dkt. 72-4, at 18.  Alcantara returned to the precinct and was detained at Rikers and awaited trial.  Alcantara Dep. at 34:20–25.

On April 25, 2013, Alcantara was convicted of sexual abuse in the first degree and criminal sexual act in the first degree.  SOF ¶ 21; CSOF ¶ 21; *see also* Manningham Decl. Ex. E, Dkt. 72-5, at 2.  Before trial and after, while in custody, Alcantara would request and receive additional treatment for the injuries he was dealt on the night of his arrest.  Most notably, the day after his hospital visit, Alcantara noticed significant shoulder pain.  Alcantara Dep. at 32:8–13. He was eventually treated in June 2012 for an abrasion on his shoulder that had become infected.

Pl. Opp. Ex. F, Dkt. 80-6.[3]  Further, in August 2013, it was determined that Alcantara's nose had

in fact been broken on the night of his arrest, following the physical confrontation first with his

neighbor and later with police, and would require surgery.  Pl. Opp. Ex. G, Dkt. 80-6.  This

lawsuit followed.

<u>Legal Standard</u>

Summary judgment shall be granted in the absence of a genuine dispute as to any

material fact and upon a showing that the movant is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986).  "[A] fact is material if it 'might affect the outcome of the suit under the

governing law.'"  *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City

of New York*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Courts do not try issues of fact at the

summary judgment stage, but instead merely "determine whether there are issues of fact to be

tried."  *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire

& Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)).

The movant carries the burden of demonstrating there is no genuine dispute as to any

material fact, *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the motion

court will resolve all ambiguities and draw all permissible factual inferences in the light most

favorable to the party opposing the motion.  *See Sec. Ins. Co. of Hartford v. Old Dominion

Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  Where the nonmoving party "will bear the

---

[3] Although plaintiff has not authenticated these medical records, the Court may consider them on this motion, as defendants have not objected to their authenticity and, in any event, "it is well-established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial."  *Parks v. Blanchette*, 144 F. Supp. 3d 282, 293 (D. Conn. 2015) (cleaned up).

burden of proof at trial," it bears the initial procedural burden at summary judgment of demonstrating that undisputed facts "establish the existence of [each] element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322–23. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997). When the parties cross-move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

Finally, mindful that plaintiff is proceeding *pro se*, the Court reads his papers liberally and interprets them as raising the strongest arguments they suggest. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

<u>Discussion</u>

I.   <u>Excessive Force</u>

The Fourth Amendment prohibits the use of excessive force by a police officer against a pre-trial detainee.[4]  *See Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). In evaluating an excessive force claim, the central question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their

---

[4] Alcantara's complaint purports to bring claims of excessive force under the Eighth and Fourteenth Amendments, *see* Compl., Dkt. 1, at ¶¶ 24–29, but excessive force claims pleaded by pre-trial detainees must be brought under the Fourth Amendment, which is more favorable to § 1983 plaintiffs. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). Notwithstanding the complaint's misidentification of the proper legal vehicle, the Court proceeds to analyze Alcantara's excessive force claims under the Fourth Amendment. *See Portillo v. City of New York*, 2020 WL 2836435, at *4 (S.D.N.Y. June 1, 2020).

underlying intent or motivation." *Graham*, 490 U.S. at 396.  Objective reasonableness depends on the totality of the circumstances, but may turn on:  (1) the nature and severity of the crime leading to the arrest; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and/or (3) whether the suspect actively resisted or attempted to evade arrest.  *Id.*  Further, courts must be mindful that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."  *Id.* at 396, 109 S. Ct. 1865, 1872 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

There are two theories under which an excessive force claim may lie: (1) when the officer "directly participates in an assault"; or (2) when the officer "is present during the assault[] and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)).  Alcantara contends defendants are liable under both theories.

A.     *Direct Participation*

Alcantara first claims that defendants used excessive force when they brought him to the ground to effectuate his arrest.  In support, Alcantara points to the medical evidence of his shoulder injury and the grand jury testimony from both officers.  Specifically, he highlights that Officer Weiburg testified that he "grabbed both of [plaintiff's] wrists to turn him around to place handcuffs on him" and "had taken him down to the ground asking him to stop resisting."  Pl. Opp. Ex. A, Dkt. 80-1, at 5:1–18.  Likewise, Officer DiGangi testified that they "placed [Alcantara] up against the house" and, after he resisted arrest and tried to run away, they took him down.  Pl. Opp. Ex. B, Dkt. 80-2, at 14:14–24.  In his own deposition, plaintiff did not mention the takedown, stating only that at the time of his arrest, "they g[o]t me a shirt, I put it on, and then they handcuffed me."  Alcantara Dep. at 26:12–13.

6

Little separates the accounts of the involved parties' stories of Alcantara's handcuffing. Those accounts hobble the "direct participation" subset of plaintiff's excessive force claim from the outset.  They show that the amount of force used by the officers to effectuate Alcantara's arrest was neither excessive nor exceptional; indeed, other courts have found similar uses of force to be *de minimis*.  *See Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 241 (S.D.N.Y. 2013) (finding officer's grabbing of plaintiff's arms and pushing her against a car to be *de minimis* and granting summary judgment) *Rincon v. City of New York*, No. 03 CIV. 8276 (LAP), 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (finding officer's wrestling plaintiff to the ground *de minimis* and granting summary judgment).

Simply put, using the yardstick fashioned by the Supreme Court in *Graham*, there can be no reasonable dispute that the officers' use of force was objectively reasonable.  Alcantara was arrested on suspicion of rape, an unquestionably serious crime.  He also posed at least some threat to those around him, as Alcantara, a full-grown man, was drunk and had been belligerent towards his neighbor prior to the officers' arrival.  *See* Alcantara Dep. at 24:14–16 ("I told him that I didn't want to go to jail and so we were like pushing and shoving.").  Finally, Alcantara was brought to the ground only after he began resisting arrest.[5]  Under these circumstances, no

---

[5] During his deposition, far from undercutting the officers' testimony, Alcantara admitted that he wanted to run away before the officers arrived and that he fought with his neighbor because "he didn't want to be arrested."  Alcantara Dep. at 24:14–25, 26:5–6.  The only countervailing consideration is the contention in his opposition memorandum that, at his criminal trial, "the jury rejected [the] prosecutor's contention that plaintiff had resisted arrest."  Pl. Opp. at 5.  To the contrary, as is clear from the public court documents submitted by the parties and filed in Alcantara's habeas petition, of which the court may properly take judicial notice on a motion for summary judgment, *see, e.g.*, *Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 29 (2d Cir. 2006); *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 256 (S.D.N.Y. 2019), *aff'd*, 816 F. App'x 611 (2d Cir. 2020), no resisting arrest charge was presented to the jury.  *See* Pl. Ex. I (Certificate of Conviction), Dkt. 80-9 ("Charge(s):  Crim Sex Act 1º, PL 130.50-3; Sex Abuse 3º, PL 130.65-3"); *see generally* State Court Record, Dkt. 9, Alcantara v. Bell, 19-cv-3686 (June 19, 2019).

reasonable jury could find the officers' mild use of force excessive.

In what appears to be an effort to embellish his claims, in his motion papers, Alcantara also spotlights his allegation that Officers DiGangi and Weiburg threw him to the ground and stomped on his shoulder and back in front of the 122nd precinct. *See* Pl. Opp. (citing Compl. ¶ 18). At this point, though, mere allegations will not do. Although there is evidence that Alcantara suffered shoulder injuries, his contention that they were caused by Officers DiGangi and Weiburg is unsupported. Much to the contrary, both officers attest in sworn statements that they did not even transport plaintiff back to the precinct, let alone stomp Alcantara upon his arrival there. *See* Weiburg Decl., Dkt. 59, ¶¶ 10–11; DiGangi Decl., Dkt. 60, ¶¶ 10–11. Moreover, plaintiff's shifting narrative helps eviscerate his claims. Pointedly, although his complaint alleged that the officers attacked him outside of the precinct, *see* Compl. ¶ 18, Alcantara's motion papers claim that the alleged attack occurred after he was in handcuffs but before defendants turned him over to Sergeant Donaghoue-Gold and Officer Liconti, *see* Pl. Opp. at 3, which, as the undisputed Rule 56.1 statements show, occurred at the scene of his arrest, *see* SOF ¶¶ 14–15; CSOF ¶¶ 14–15. What's more, although Alcantara was asked at his deposition about defendants' conduct both during the arrest and at the precinct, conspicuously absent from his answers is any mention of a shoulder stomp. *See* Alcantara Dep. at 26–30. Plaintiff did, however, admit that his neighbor "threw him to the floor" before the officers arrived. *See id.* at 25:12.

Accordingly, given the material facts about which there is no genuine dispute, no reasonable juror could find that the officers used excessive force when arresting Alcantara. Defendants' motion for summary judgment on the direct participation subset of plaintiff's excessive force claim must, therefore, be granted.

B.      *Failure to Intervene*

Whether an officer had a realistic chance to intervene to blunt the use of excessive force by another officer "is normally a question for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) (cleaned up).  As the Second Circuit has explained, this question turns on the totality of the circumstances the record establishes, including "the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." *Figueroa v. Mazza*, 825 F.3d 89, 107 (2d Cir. 2016).  "Among these considerations, of course, the assault's duration will always be relevant and will frequently assume great importance." *Id*.

*Figueroa* itself is instructive.  There, two officers faced a claim brought under a failure-to-intervene theory after plaintiff had been punched multiple times in a police car by an officer who, as is the case here, remained unidentified throughout the proceedings. *Id.* at 106.  At trial, the district court interpreted the plaintiff's testimony to be a reenactment of the assault and timed the assault to have lasted 20 seconds. *Id.*  The court then reasoned that when an assault takes less than 30 seconds, officers who are present lack sufficient time to intervene and, as a result, it granted the arresting officers' judgment as a matter of law. *Id.*

The Second Circuit disagreed. *Id.* at 108.  It observed that other testimony at the trial suggested the assault lasted longer than 30 seconds. *Id.* at 107.  But, more instructively here, the *Figueroa* court rejected any bright-line rule based on the length of the assault, directing courts instead to evaluate the totality of the circumstances. *Id*.  "The essential inquiry," the Circuit held, "is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another." *Id.* at 107–08 (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

Focused on the record, *Figueroa* highlighted the officers' close proximity to plaintiff and found that nothing suggested they could not have either physically intervened by getting out of the police car or at least called out to rebuke the assaulting officer. *Id.* at 108. Accordingly, the Circuit concluded it could not hold that the assault "occurred so quickly that the defendant officers lacked time to intercede as a matter of law." *Id.*

Here, the record upon which the summary judgment motion lies creates issues ripe for jury resolution. Indeed, according to defendants' own Rule 56.1 statement, "[a]fter being placed in handcuffs, [p]laintiff sat on the sidewalk and waited." SOF ¶ 8. At that point, the assaulting officer arrived, defendants "stood plaintiff up," and "the third officer punched plaintiff in the face twice." *Id.* ¶¶ 12–13. The only relevant, additional detail in the record is Alcantara's deposition testimony that when the assaulting officer arrived, he asked, "It was this one?" and defendants replied, "Yes." Alcantara Dep. at 28:24–25.

Neither Officer DiGangi nor Officer Weiburg contends that the punches were excusable in any way. Instead, they seek to avoid liability by arguing that the punches were "unexpected" and did not allow "adequate time to intervene." Defs. Br. at 5–6. But nothing in the record indicates how much time elapsed between the anonymous officer's arrival and the first punch, or between the first and second punches. Nor have the officers identified any "obstacles that might have hindered [their] ability to intercede." *See Ekukpe v. Santiago*, 823 F. App'x 25, 32 (2d Cir. 2020) (affirming denial of summary judgment on failure to intervene claim) (quoting *Figueroa*, 825 F.3d at 107). Without evidence to establish these critical facts, defendants cannot show as a matter of law they could not have intervened either before the first punch or between the first and second punch, especially given their close physical proximity to plaintiff, having just stood him up. *See also Ross v. Willis*, 2021 WL 3500163, at *15 (S.D.N.Y. Aug. 9, 2021) (denying summary judgment on failure to intervene claim where the defendant-officers "were in easy

reach of" the assaulting officer and "physically capable of stopping him").

Certainly, why defendants identified plaintiff to and stood him up for the unidentified officer is unexplained and troubling, and viewing this evidence in the light most favorable to plaintiff, a reasonable jury could readily conclude that defendants were, in fact, "tacit collaborator[s]." *Figueroa*, 825 F.3d at 108.  Defendants' motion for summary judgment on this claim is, consequently, denied.[6]

## II.   Deliberate Indifference to Serious Medical Needs

The Fourteenth Amendment protects pre-trial detainees from deliberate indifference to serious medical needs. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Such claims are analyzed using a two-prong test.  *Id.*  First, plaintiff must have been deprived adequate medical care for a sufficiently serious medical condition.  *Id.*  This "contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Id.* at 703 (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  Second, each defendant must have "recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).  This "requires proof of a *mens rea* greater than mere negligence."  *Id.* at 36.[7]

Here, the Court need not decide whether plaintiff was deprived adequate care for a

---

[6] Defendants' throwaway argument that they should be granted qualified immunity at the very least because "the law did not put defendants on notice that they could be liable for failing to intervene when the force consisted of two unexpected punches," Defs. Br. at 6, is rejected for the same reasons; that is, defendants' argument rests on the representation that the punches were unexpected, which a jury might find is belied by other circumstances.

[7] After *Darnell*, claims made under the Fourteenth Amendment, like Alcantara's, do not require a showing of subjective awareness; a showing of objective recklessness is sufficient. *See Simmons v. Mason*, 2019 WL 4525613, at *9–10 (S.D.N.Y. Sept. 18, 2019).

sufficiently serious medical condition because no reasonable jury could find that either defendant had the *mens rea* requisite to establish liability.  Plaintiff has offered no proof that defendants knew or should have known that plaintiff's condition posed an excessive risk to his health or safety.  For one, the record evidence shows that the only injury that would have been apparent to Officers DiGangi and Weiburg was some bleeding and facial abrasions.  *See* Pl. Opp. Ex. D, Dkt. 63-4, at 1; Alcantara Dep. at 30:4–6.  But slight bleeding and abrasions, especially when viewed alongside Alcantara's failure to complain to defendants about his injuries and acknowledgement that he initially "didn't feel the blows" due to his intoxication, *see* Alcantara Dep. at 30:23–25, would not lead an objectively reasonable officer to believe his injuries posed an "excessive" health or safety risk.  *See, e.g.*, *Mikulec v. Town of Cheektowaga*, 909 F. Supp. 2d 214, 223 (W.D.N.Y. 2012) ("[I]t cannot be said that Mikulec's resulting injuries—some bleeding and abrasions—could have produced 'death, degeneration, or extreme pain.'"); *Ford v. Phillips*, 2007 WL 946703, at *12 (S.D.N.Y. Mar. 27, 2007) ("Abrasions, a minor bruise, slight bleeding and scratches are not injuries that may produce death, degeneration or extreme pain, and no reasonable jury could find to the contrary.").

Finally, any claim of reckless indifference on the part of Officers DiGangi and Weiburg is belied by the fact that they did not simply leave Alcantara to suffer.  In fact, defendants turned Alcantara over to other officers who took him back to the precinct, and after complaining about his pain, Detective Ng called an ambulance, and plaintiff arrived at the hospital about four hours after his arrest.  Since no evidence suggests that his condition was aggravated during that time, no reasonable jury could conclude that allowing such a short delay was reckless.  *See Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 447 (S.D.N.Y. 2016) ("In light of the absence of any indication that more prompt treatment was necessary and the relatively minor delay before the officers brought [the arrestee] to [the jail where he received treatment], no

12

reasonable jury could conclude that the police officers delayed providing [the arrestee] treatment with the subjective recklessness necessary to satisfy the subjective element of a deliberate indifference claim." (quotations omitted)).  With the nature of the injury sustained by plaintiff at the scene of the arrest and the time between his arrest and dispatch to the hospital all beyond genuine dispute, Officers DiGangi and Weiburg are entitled to summary judgment on this claim.

<u>Conclusion</u>

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part.  The litigation may proceed solely as to Alcantara's failure-to-intervene claim.

The parties are respectfully referred to Magistrate Judge Robert M. Levy for continued pre-trial management of this case.

So Ordered.

Dated:   Brooklyn, New York
            April 30, 2022

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge